HAMILTON DAVIDSON & others *vs.* THE BOSTON & MAINE RAILROAD.

The grantor of a tide mill and mill pond, who had reserved the right of boating and rafting through the pond, and of using the same as a depot for lumber, it seems, has no such proprietary interest in the premises, by virtue of such reservation, as to entitle him to become, or to render it necessary that he should be made, a party to a proceeding under the Rev. Sts. *c.* 24, §§ 48, 49, 50, for the recovery of damages occasioned by the laying out and construction of a railroad through the granted premises.

Where an application is made and pending before county commissioners, for an estimation and adjudication of the petitioner's damages, occasioned by the construction of a railroad, it is competent for the respondents, if there are other persons interested who have not joined in the application, to cause such persons to be summoned and made parties, before a warrant for a jury is issued; and if the respondents neglect to do so, they cannot object before the jury, or afterwards, that such persons were not previously made parties.

Where the damages, occasioned by the construction of a railroad, are estimated by county commissioners, and both parties are dissatisfied with the estimate and apply to the commissioners for a warrant for a jury to revise the damages, it is only necessary that one warrant should be issued; but if separate warrants are issued on both petitions, the sheriff should execute and return them as one.

Where the petitioners before a sheriff's jury, empanelled for the purpose of estimating the damages occasioned by the construction of a railroad, rested their claim therefor on the ground, that a creek crossed by the railroad was a part of a tide mill pond belonging to the petitioners, and introduced in evidence the deed under which they held the premises, together with a plan and survey thereof, the correctness of which was testified to by the surveyor by whom they were made, it was held, that whether the creek in question was a part of the mill pond or not, was a question of fact for the jury, depending upon the description contained in the deed, and the bounds and monuments found upon the ground, answering to such description, and to which the description applied.

A sheriff's jury are not bound to find and return by their verdict, as an abstract proposition, what right, title, or interest, a party before them has in land, which he claims in virtue of a deed in evidence; nor are they bound to find a special verdict, upon the whole or any particular part of the case before them, though they may do so, if they think proper.

The owner in fee of a tide mill and mill pond having leased the same for years, and the proprietors of a railroad having constructed their road over a portion of the pond, the owner and lessee joined in a proceeding for the recovery of damages therefor, and introduced the lease of the premises in evidence; it was held, that the respondents were entitled, with a view to the assessment of damages, to have the jury instructed by the sheriff, as matter of law, whether the lease conveyed an interest in the soil covered with tide water, or only a right to use the water for a special purpose, as an easement, in connection with the other estate demised.

The owner of a tide mill, who is also the riparian proprietor of flats, from which the tide wholly ebbs, between his mill and navigable water, has no right, either as against conterminous proprietors or the public, to have his flats kept open and unobstructed, for the free flow and reflow of the tide water, for the use of his mills or for navigation. The adjoining proprietors may build solid structures to

the extent of one hundred rods, and thereby obstruct the flow and reflow of **the** tide, provided they do not wholly cut off the access of other proprietors to their houses and lands, and if the mill owner, or other proprietors, suffer damage therefrom, it is *damnum absque injuria.* The public have a right to regulate the use of navigable waters ; and the erection of a bridge, with or without a draw, by the authority of the legislature, is the regulation of a public right, and not the deprivation of a private right, which can be a ground for damages, or the taking of private property for a public use, which will entitle the owner to compensation. When the location of a railroad is filed, the land over which it passes may then be *prima facie* considered as taken; and the persons who are owners at that time may claim and recover damages therefor. If any person, when a claim for damages is made, claims damages for the taking of the same land, on the ground of an earlier title, the respondents must allege and prove such title in bar of the previous claim.

The owner of a right of flowage, which is injuriously affected by the construction of a railroad, is entitled to damages therefor.

THE Proprietors of the Middlesex Canal, a corporation legally established in this commonwealth, being the owners in fee of the tide mill and mill pond, and of the adjoining flats lying southerly of the same, as delineated on the map inserted at page 9, leased the mill and mill pond to Hamilton David-son, on the 1st of July, 1839, by an indenture of that date, for the term of fifteen years from the first day of May then next. Davidson, afterwards, and before the location of the road of the Boston and Maine Extension Railroad Company, as hereinafter mentioned, assigned the lease to John Wesson and John Gary, as tenants in common ; and, on the 29th of August, 1844, the lessors conveyed their whole estate above mentioned, namely, the mill, mill pond and flats, subject to the lease to Davidson, (which they assigned to the grantee,) by their deed of that date, to Rhodes G. Lockwood, who subsequently conveyed certain undivided interests therein to Hamilton Davidson and John Nesmith, as tenants in common with him.

The Boston and Maine Railroad Extension Company, (afterwards merged in the Boston and Maine Railroad,) having laid out and constructed their road near and upon the premises, in such a manner as to affect the same injuriously, in the opinion of the owners and lessees, they presented their petition to the county commissioners, at the meeting of the board in June, 1846, praying an estimate and assessment of

the damages, severally sustained by them, Davidson, Lockwood and Nesmith, as owners in fee, and Wesson and Gary, as lessees for years, in consequence of such location and construction.*

The commissioners proceeded upon this petition and estimated the damages of the owners in fee at $1866·66, and of the lessees for years at $333·33, and ordered the aggregate amount, with $44·20, costs, to be paid by the railroad corporation to the petitioners. Both parties were dissatisfied with the estimate, and applied to the commissioners for a jury to revise the damages. The commissioners ordered warrants to issue upon both applications, and they were issued accordingly, bearing date respectively the 28th of May, and the 5th of June, 1847.

The sheriff proceeded to execute these warrants, treating them both as one, and returned the same, with the verdict of the jury, to the court of common pleas, at the December term thereof, 1847. Four of the jurors, as appeared by the return, were drawn and summoned from the city of Charlestown, in which the premises alleged to be injured were situated.

The verdict of the jury was, " that the said Hamilton Davidson, Rhodes G. Lockwood and John Nesmith, John Wesson and John Gary, recover against the Boston and Maine Railroad the sum of $2690·96'; and they apportion .the said total amount of damages among the several petitioners, in proportion to their several interests, and to the damages sustained by them, respectively, as follows, to wit, to the said Hamilton Davidson the sum of $448·49, to the said Rhodes G. Lockwood the sum of $448·49, to the said John Nesmith the sum of $896·99, and to the said John Wesson and John Gary the sum of $896·99."

---

* The location of the road, so far as it affected the estate or interest of the petitioners, is seen on the map. The railroad, where it crosses the creek, which makes a part of or runs into the mill pond, is constructed with a culvert for the passage of the water. Where it crosses the flats lying southerly and easterly of the mill pond, it is a solid structure.

The court of common pleas accepted the verdict, and the respondents thereupon appealed to this court. The cause was argued here upon the rulings and instructions of the sheriff, at the trial, as certified by him at the request of the parties.

In the deed of the Proprietors of the Middlesex Canal to Lockwood, under and with whom the petitioners Davidson and Nesmith claimed, the mill is conveyed by metes and bounds, with all the rights, ways, easements, privileges and appurtenances to the same belonging, and all the wheels, &c., together with a right of way particularly described; the mill pond is conveyed under the description of "all their right, title, interest and estate, in and to the mill pond, and the land and flats covered with water, lying northerly and north-westerly of the aforedescribed premises, bounded," &c., &c., " with the dam aforesaid and all the waters of the said pond and of the creeks and streams entering the same, and all rights of flowage, and all other rights, easements, privileges, and appurtenances thereto belonging ; " and the flats therein conveyed are described as "all right, title, interest and estate of the said proprietors in and to the flats and land covered with water," lying southerly of the mill dam aforesaid, extending to a line specified, and westerly " to the easterly corner of the southerly end of the stone abutment of the railroad bridge of the Boston and Maine Extension Railroad."

In this deed, the grantors reserved, among other things, the right to use the mill pond, for the purpose of passing and repassing through the same, with boats, rafts and all things required to be floated on the waters of the canal, and for the purpose of a depot for lumber, timber and other articles, to be placed and kept there at the convenience and pleasure of the grantors; the right to use the waters of the mill pond for lockage as they might require ; and the right to draw off the water whenever it might be necessary for the purpose of repairing the locks, &c.

The lease contained, in terms, a demise of the mills, mill site, dams, wharves, sheds, houses, and water privileges, but nothing including the soil of the pond.

The petitioners set forth in their petition to the county commissioners, that Davidson, Lockwood and Nesmith were the owners in fee, as tenants in common, and that Wesson and Gary were the lessees for years, as tenants in common, of the mill and mill pond, described as in the deed of the same above mentioned, and "also of all the flats to both of the above described premises appurtenant and belonging:" and the petitioners averred, that as such owners and lessees, they occupied and possessed a mill standing on the premises, from which they had hitherto derived great emolument and advantage; that the Boston and Maine Railroad had located and constructed their road upon, over and through the premises, and thereby taken a large amount of land and flats belonging to the petitioners, and greatly injured the premises adjoining; that, by the location and construction of the respondents' road across the mouth of the creek, at the head of which the petitioners' mill is situate, the respondents had greatly obstructed and impeded the flow of the tide water into the petitioners' mill dam; that by the location and construction of the railroad through the petitioners' mill dam, the respondents had greatly obstructed and prevented the tide water, which overflowed the meadow and land above the pond, from flowing back into the pond; that, in consequence of these obstructions, the petitioners' mills could not be worked as effectually as before; and that the respondents, by the location and construction of their road, had greatly injured the premises of the petitioners for the purposes of a wharf.

The rulings and instructions complained of were as follows: —

1. The petitioners having introduced in evidence the deeds of the proprietors of the Middlesex canal to Rhodes G. Lockwood, and of Lockwood to Davidson and Nesmith, and a plan and survey of the premises made by Charles Whitney, which he testified was correct, the respondents thereupon objected, that it appeared by the first named deed, that divers valuable rights and interests in the premises were reserved and retained by the grantors, which showed them to be still interested in

the premises; and, therefore, that no further proceedings could legally take place in the cause, until the grantors had been summoned in or made parties to the same. This objection was overruled by the sheriff, and the trial proceeded.

2. The respondents, premising that "the title shown by the petitioners Lockwood, Nesmith and Davidson, depending upon the deed above mentioned, and these petitioners claiming no interest in any land covered by the respondents' railroad, except across the creek near the culvert mentioned in their petition, the location of which appeared on the plan," requested the sheriff, secondly, to rule and direct the jury, that this evidence was insufficient to sustain the title of the petitioners to the land taken for the railroad or any interest therein, and also to direct the jury to find, and return in their verdict, whether or not these petitioners, on the evidence, had any, and what title or interest in such land, or in any and what part thereof.

The petitioners, thereupon, requested the sheriff to rule, that the deed from the proprietors of the Middlesex canal to Lockwood did, by its terms, applied to the undisputed localities, and in legal construction, embrace and convey that portion of the pond or creek, which had been built upon and crossed by the respondents' road; and, the effect and operation of the deed being thus decided, as a matter of law, that no question in regard to the same was to be submitted to the jury, nor were they to find any verdict, special or otherwise, in relation to the question of title.

The sheriff declined to instruct the jury, as requested by the respondents, or to rule, as requested by the petitioners; but, on the motion of the respondents, the petitioners objecting, he submitted to the jury, as a matter of fact, the question of the right and title of the petitioners to the premises described in the petition, to determine the same, upon the deed and other evidence, so far as respected the damages of the petitioners.

3. The petitioners having given in evidence a lease, dated July 1st, 1839, from the proprietors of the Middlesex canal o Hamilton Davidson, with subsequent assignments thereof

to two of the petitioners, together with evidence of the use and occupation of the waters of the whole pond and creek, as delineated on the plan, for carrying a mill, by the lessors and their grantors and lessees, for upwards of forty years prior to the filing of the location of the respondents' road, the respondents' requested the sheriff, thirdly, to rule and instruct the jury, that the lease conveyed no right, title, or interest in the land covered by the respondents' railroad, or in any part thereof; and also to direct the jury to find, and return in their verdict, whether or not the petitioners, Wesson and Gary, had any and what right, title, or interest in such land, or in any and what part thereof. The sheriff refused to give this instruction, but did instruct the jury, that the lease, together with the evidence as to the mode and period of use and occupation of the waters of the pond, if the same were believed, did convey to the lessee, and those holding under him, the right to use and enjoy the waters of that part of the pond or creek, which was covered or crossed by the respondents' railroad.

4. The respondents presented a fourth prayer for instructions, to wit, that the petitioners had no right to have the flats, where the respondents' structure stands, remain open for the flow and reflow of the tide, or for the purpose of navigation to their wharf, otherwise than as they then were; and also to direct the jury to find and return in their verdict, whether or not the petitioners, or any of them, had any and what right to have the said flats, or any and what part thereof, remain open for their use, for either of the purposes above mentioned. The sheriff declined giving the instruction, as requested, but submitted to the jury, as a matter of fact, to be determined upon the evidence, so far as respected the damages of the petitioners, the question of the right of the petitioners in and to the flats referred to, for the purposes mentioned; and he further instructed them, in respect to the form of their verdict, that if they should be satisfied, that any of the petitioners were entitled to damages, they should first find and set forth in their verdict the total amount of the

damages, and then apportion the same amongst the several parties, whom they should find to be entitled thereto, in proportion to their several interests, and the damages sustained by them respectively, and set forth such apportionment in their verdict ; that if they should find any one or more of the petitioners not to have sustained any damage, they were to set forth that fact ; and that they were not required by law to render a special verdict ; but that they were at liberty to set forth the items upon which they should find damages, if they should see fit to do so.

5. The respondents submitted a fifth prayer for instructions, namely, that the owners of the land at the mouth of the creek, near the culvert and above, had a right to place any and what obstructions they pleased across the creek, and to dike out the tide waters or not at pleasure ; and also to direct the jury to find and return in their verdict, whether or not the petitioners had any and what right to have the creek remain open for the purposes of their mill pond and mil' The sheriff did not so instruct the jury, but instructed them, that if from the evidence they should believe, that the petitioners had not any right or title in and to the land referred to by the respondents in their prayer for instructions, or to the use of the waters covering the same, then that the owners of such land had the right to place obstructions and do the other acts referred to by the respondents.

6. The respondents having introduced evidence, that they entered upon the premises described in the petition, and built the culvert before the middle of July, 1844, and that pile drivers were at work, under the direction of the respondents on each side of the outlet of the cove, on the 9th of the same July and afterwards ; the respondents, thereupon, submitted their sixth prayer for instructions, namely, that the owners of the premises, at the time the respondents took possession and built their road, were the parties entitled to institute this proceeding for damages, if any party were so entitled, and that their subsequent conveyance passed the premises subject to any incumbrance then acquired by the responderts

by virtue of their charter; and, therefore, that none of the petitioners, but the tenants for years, Wesson and Gary, had a right to prosecute this petition, even if the same were otherwise maintainable. The sheriff declined so to instruct the jury, but did instruct them that the parties who were owners and lessees, at the time the respondents filed the location of their road, namely, the 13th of February, 1845, had the right to present and maintain a petition, for the damages occasioned by the construction of the road to the premises owned or held by them, respectively, at the time of the filing of the location.

*T. Farrar,* (with whom was *R. Choate,*) for the respondents.

*J. Dana,* (with whom was *S. Bartlett,*) for the petitioners.

SHAW, C. J.* The petitioners, in this case, who are the owners and lessees of the canal tide mills, in Charlestown, demand damages for taking their land, as they allege, and for an injury to their mill privilege, occasioned by the laying out and construction of the railroad of the respondents. The case comes before this court by an appeal from an adjudication of the court of common pleas, accepting the verdict of a sheriff's jury, by which damages were awarded to the petitioners, for alleged errors in matters of law apparent on the record and proceedings. We shall consider some of the more important questions raised by the exceptions and submitted to us in the argument.

The first objection, taken at the argument, is, that four of the jurors were summoned from Charlestown, in which the premises are located, and which is not an adjoining town.

This objection has been considered in the other cases against these respondents, and overruled, on the ground, that it was an exception to the jurors thus drawn; and that the respondents, if they were opposed to having them sit, should have excepted at the time. This rule is adopted in pursuance of a settled and salutary principle of law, that although a party shall have an opportunity to take advantage of any

---

* WILDE, J., and FLETCHER, J., did not sit in this cause.

defect or irregularity, which he apprehends may be injurious
to him, yet he must avail himself of it in due time and proper
order, and having passed the proper stage, and taken his
chance with the jury, as drawn, he shall be taken to have
acquiesced and waived his exception. *Merrill* v. *Berkshire*,
11 Pick. 269; *Simonds* v. *Parker*, 1 Met. 508; *Fox* v.
*Hazelton*, 10 Pick. 275 ; *Hallock* v. *Franklin*, 2 Met. 558.

Had the exception been then made before the sheriff, he
might have sustained it, and either postponed the trial and
summoned other jurors from another town ; or, if the case
was such that he could not lawfully proceed, he might have
returned the warrant with the facts ; and then the county
commissioners might have issued a new warrant, as in case
of death or insanity, or other casualty, which renders the exe-
cution of the warrant impracticable.

1. It was objected, at the trial, (and this was the subject of
the first exception to the rulings of the sheriff,) that the pro-
prietors of the Middlesex canal were interested in the premises ;
they having, on a conveyance thereof, reserved certain ease-
ments therein, for rafting and boating through the mill pond,
and laying logs and lumber therein. On referring to the deed
in question, and to the proof of the localities, we are strongly
inclined to the opinion, that the proprietors of the Middlesex
canal had no such proprietary interest in these premises, which
would be injuriously affected by the location of the railroad,
as would have given them any interest in the subject under
the provisions of the Rev. Sts. *c.* 24, §§ 48, 49, 50. We are
not prepared to say, that the legal distinction, between an
estate and an easement in the premises taken, will always
determine whether one has or has not a proprietary interest,
rendering it proper to make him a party or not with the
owners, in a claim for damages. Possibly an easement for
a mill privilege, for example, may be so large and valuable,
as to render an interest therein much more important than
that of a lessee for years or a reversioner. Yet there is one
provision in the railroad act, which implies that a person
having a private right of way may have a separate application

Davidson & others *v.* The Boston & Maine Railroad.

for damages, by limiting the time within which such application shall be made. Rev. Sts. *c.* 39, § 71.

But the ground upon which we place our decision of this point is, that this is not an objection which the respondents can make before the sheriff's jury. The statute provision is designed for the security and benefit of respondents; that, in a proper case, they may have one entire appraisement of all damages done to any estate, and not stand in danger of being charged with more than one estimate, by being compelled to go to different juries upon distinct applications. And it is competent for the respondents, when called before the commissioners, if there are other persons having claims, to cause them to be summoned and made parties, before a warrant for a jury is ordered. This is the more important for the reasons stated in the case of the Fitchburg Railroad Company against these respondents, (see *ante*, p. 83,) because the damages of such persons are first to be assessed by the commissioners. If such persons, when duly summoned, do not come in and become parties, they are bound by the result. We are therefore of opinion, that the sheriff did right in overruling this objection. It appears by the record, that a jury was ordered to revise the damages awarded by the commissioners, as well on the motion and request of the respondents, as of the petitioners: it was clearly, therefore, the duty of the respondents to see that the proper parties were in, before they prayed for a warrant to the sheriff.

We may remark, in passing, that two warrants were issued in this case; a proceeding which was quite superfluous, although it was proper to recite in one warrant that it was made in pursuance of the request of both parties. It is like an appeal by both parties; when an appeal is allowed, the fact is stated in the record; but both need not be separately entered and prosecuted.

2. The deeds from the proprietors of the Middlesex canal to Lockwood, and from Lockwood to Nesmith and Davidson, with the testimony of Whitney, and the plan and survey made by him, being introduced in evidence, each party

9 *

requested the sheriff to instruct the jury, the one that the evidence did, and the other that it did not, make a complete title to the petitioners. But it appears to us, that the sheriff did right in not giving either instruction. It was a pure question of fact, upon the evidence, whether the creek, over which the railroad was built, was part of the pond ; it depended upon the description contained in the deed, and the bounds and monuments found upon the ground, answering to such description, and to which the description applied. It was, therefore, rightly left to the jury.

The legal meaning, operation and effect of a deed — the construction of a deed or other written instrument — is a question of law to be decided by the court. If it be uncertain what any particular clause or passage means, it is a patent ambiguity, and must be decided by the court, by the best means in their power, under the rules of exposition prescribed by good authority. But when the ambiguity arises from evidence *aliunde,* as whether a tract of water of a particular description is a creek or a pond, which depends upon width, shape, connection with other land or water, it is an ambiguity created by evidence *ab extra ;* it is a latent ambiguity, and must be decided by the evidence. As already said, it is not for the court or presiding officer to direct a jury as to the weight or sufficiency of evidence. If either of the parties had desired the opinion of the sheriff, upon any question of the construction, meaning or effect of the deed, it should have been specially presented and called for. We think the decision was right.

3. The next exception is stated thus : The petitioners Gary and Wesson claiming under the proprietors of the Middlesex canal only, by the lease dated July 1st, 1839, without showing any title in the company, the respondents requested the sheriff to rule, that the lease conveyed no right, title or interest in the land covered by the defendants' railroad, or any part thereof. The land thus covered, as appears by the evidence, and by the plan, is no part of the mill or land leased, but a part of the pond or creek, opening into the pond raised

by the tide mill dam for holding in the tide water, for the purpose of driving the mills. The respondents requested the sheriff to rule and instruct the jury, that the lease conveyed no right, title or interest in the land covered by the railroad, or any part thereof; that is, in the land covered by the creek or pond. They also requested the sheriff to instruct the jury to find, and return in their verdict, whether or not the lessees had any and what right, title or interest in the said land, or any or what part thereof. This the sheriff declined, but instructed the jury that the lease and the evidence as to the mode and period of use and occupancy of the waters of the pond, if believed, did convey to the lessee, and those holding under him, the right to use and enjoy the waters of that part of the pond or creek covered or crossed by the railroad of the respondents.

This instruction was correct as far as it went; but we think the entire prayer for instructions was such as the sheriff was not bound to give, because it required him to instruct the jury what right, title or interest the tenants under this lease took in the land constituting the bottom of the pond or creek. We think the jury were not bound to return their finding upon that abstract proposition; or to find a special verdict upon the whole or any particular part of the case, though they might do so voluntarily.

But we are strongly inclined to the opinion, that the respondents were entitled to an opinion and direction, upon the construction of the lease, on this question, namely, whether, if the proprietors of the Middlesex canal were the owners and in possession of the soil of the pond and creeks, as well as of the mills, mill site and dams, their lease operated as a demise of the soil of the pond, or only gave the lessees an easement therein for the use of the water connected with the mills. Considering that there may be a difference in assessing damages, between an interest in the soil covered with tide water and the right to use it for a special purpose, as an easement, in connection with other estate demised, we are of opinion, that if such a construction on a point of law had

been specifically asked for, it would have been the duty of the sheriff, as presiding officer, to give it, and to give it as prayed for by the respondents. The lease contains specifically a demise of the mills, mill site, wharves, sheds, dwelling-houses, &c., but nothing including the soil of the pond :. the use of the pond, as a mere easement, would pass with the mills as incident ; but a use would be sufficient to satisfy the implied grant under the term water privilege, and would not necessarily carry with it any greater interest in the soil of the pond.

A question might be made, whether the same rule does not apply to the deed of conveyance afterwards made by the proprietors of the Middlesex canal to Lockwood, under which the title in fee is claimed. An interest in the land may be as effectually created by a lease as by a deed in fee ; the former title being as perfect for the time as the latter in perpetuity. But there may be, and in this instance we think there is, a difference in the terms of the instrument. By the deed of conveyance, the proprietors of the Middlesex canal conveyed to Lockwood, not only the mills, wharves, sheds, flats, &c., but also all the right, title, interest and estate in and to the mill pond, and the land and flats covered with water, lying northerly and north-westerly of the aforedescribed premises, bounded as follows, &c., describing the pond by a very general description. Now, if the canal company owned the soil of the pond thus described, the deed was sufficient to pass it; and if the use of it for more than forty years to raise a head of tide water to drive the mills, without any adverse claim, was such *prima facie* evidence of possession and title, as would be good until a better title was shown, and if the land over which the railroad passed should be found to lie within the limits of the pond, in contradistinction to the creeks running into it, the deed would be *prima facie* evidence of title to the soil in those grantees, and entitle them to maintain a claim for damages against these respondents. But of this it is not necessary now to give a decided opinion.

4. The next exception is thus stated : The respondents requested the sheriff to instruct the jury, that the petitioners had no right to have the flats where the respondents' structure and railroad stands, (being the flats belonging to the petitioners, outside of their mill pond, to the south and east thereof, and between their mills and the channel from which the tide does not ebb,) remain open for the flow and reflow of the tide, or for the purposes of navigation to their wharf, otherwise than they then did ; and also that the jury might find and return in their verdict, whether or not the petitioners, or any of them, had any and what right to have the flats, or any and what part of them, remain open for their use, for either of the purposes aforesaid. These instructions the sheriff declined to give, but did submit to the jury the right of the petitioners to the flats referred to for the purposes mentioned, as a matter of fact upon the evidence, for them to determine the same so far as respects the damages of the petitioners. He also instructed them as to the form of the verdict.

This direction in regard to flats, we think, cannot be supported. The question was as to the right of riparian proprietors upon salt water, over an open tract of flats from which the tide wholly ebbs, and lying between upland territory and navigable water, kept open and unobstructed for the free flow and reflow of the tide water, for their mills or for navigation. This was a question of law, depending on the general laws of property, the colony ordinance in regard to flats, the usages of the country, and judicial decisions, and was proper to be decided as a question of law. And we are of opinion, as matter of law, that the petitioners had no right, as riparian proprietors, to have their flats kept open and unobstructed for the purposes stated, and that the jury should have been so instructed ; also, that the petitioners, as tide mill owners, had no right, either as against the public or as against conterminous and adjacent proprietors, to have their flats kept open, but only to the flow of water in the channel below low water mark, and where the tide does not ebb. The adjoining

proprietor, to the extent of one hundred rods, may build solid structures, and thus obstruct the flow and reflow of the tide, without objection, provided he does not wholly cut off his neighbor's access to his house or land; and if the mill owner or conterminous proprietor suffers in consequence, it is *dam- num absque injuria.* The public have a right to regulate the use of public navigable waters for purposes of passage; and the erection of a bridge with or without a draw, by the authority of the legislature, is the regulation of a public right, and not the deprivation of any private right, which can be a ground for damages. So far, therefore, as the railroad erected by authority of the legislature affected the right of the petitioners to pass or repass to and from their lands and wharves with vessels, it was a mere regulation of a public right, and not a taking of private property for a public use, and gave the petitioners no claim for damages.

5. The ground of the next exception was the refusal to grant the fifth prayer of the respondents for instruction to the jury. As we understand it, this was substantially a renewal of the third prayer in regard to title, and depended upon the question of fact; and the direction in effect was, that if the petitioners had either a title to the soil, or a right of flowage at that place, which was injuriously affected by laying the railroad over it, it was a ground of damage. This appears to be unobjectionable.

6. The last exception was, that the petitioners were not owners of the land in question when the same was taken by the respondents. Whether the filing of a location is the only act of taking which fixes the right of private proprietors to claim damages, and the time from which the limitation runs, (*Charlestown B. R. Co.* v. *Middlesex*, 7 Met. 78,) is a question of difficulty. It would be difficult to say that one whose land has been appropriated and actually used could not apply for his damages. The corporation may never file their location. But supposing this to be so, the act of filing a location is a formal act of the assertion of a right, and it is notice to the public and to all parties interested.

It is a mere act of location, and the land may be considered *prima facie* as taken, and the party then owner may claim accordingly, and may recover, unless another party claiming to be owner, and to have a right to damages on the ground of an earlier title, claims at the same time, and then the respondents must allege an⌐ prove such prior title in bar of the claim.

This seems to be just to the respondents, to save them from paying twice.; but it prevents them from denying that their own authoritative act, intended as definitive, and to give notoriety, is not an act of taking, within the statute.

*Verdict set aside, and cause remanded to the county commissioners to issue a new warrant to assess the petitioners' damages.*